No. 24-3739

$$=============================$$

## United States Court of Appeals for the Sixth Circuit

$$=============================$$

IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION
----------------------------
Goldstein & Russell, P.C.; Kelley & Ferraro LLP

       Appellants

v.

Plaintiffs' Executive Committee

       Interested Party–Appellee

McKesson Corporation, Cardinal Health, Inc.; Amerisourcebergen
Corporation, n/k/a Cencora, Inc.; Johnson & Johnson; Janssen
Pharmaceutica, Inc.; Ortho-McNeil Pharmaceutical; Janssen
Pharmaceuticals, Inc.; Teva Pharmaceutical Industries Ltd.; Allergan
Finance, LLC; CVS Health Corporation; CVS Pharmacy, Inc.; Walgreen
Company; Walmart, Inc.; Kroger Company

       Defendants-Appellees

$$=============================$$

*On appeal from the United States District Court for the Northern District of Ohio,
Docket Number Case No. 17-md-2804*

## MOTION OF INTERESTED PARTY-APPELLEE PLAINTIFFS' EXECUTIVE COMMITTEE TO DISMISS APPEAL ON GROUNDS OF WAIVER

1

Interested Party-Appellee Plaintiffs' Executive Committee ("PEC") hereby moves this Court pursuant to Fed. R. App. P. 27 and 28 for an order dismissing the appeal filed by Goldstein & Russell, P.C. and Kelley & Ferraro LLP ("Appellants") because the order as to which Appellants seek review was issued by the district court as part of an arbitration process for the allocation of common benefit attorneys' fees and, in connection with their participation in the arbitration process, Appellants waived the right to seek appeal beyond the district court.

In connection with a group of settlements entered into by numerous plaintiffs and several defendants in this multi-district litigation ("MDL"), the parties agreed that the defendants would pay certain monies for attorneys' fees and that the fees would be allocated by an appointed panel of arbiters among the attorneys representing the plaintiffs and among those who had worked for the common benefit of all plaintiffs in the MDL. The agreement further provided that any appeal of the awards of the arbiters could be appealed only to the district court. The district court itself stated in an order setting out procedures for applications for attorneys' fees that, at the conclusion of the process it would enter "*a final non-appealable award* of

2

attorneys' fees."    Declaration of Peter Weinberger ("Weinberger Dec."),

Exhibit 2 at 3.  Appellants and their clients agreed to these terms when they

entered into the settlement agreements with the settling defendants.

Appellants further certified their own agreement to these terms when they

submitted their application for common benefit fees.

Unhappy with the arbiters' decision awarding them no common

benefit fees, and unhappy with the district court's affirmance of that

decision, Appellants now seek the review in this Court that they waived

when they and their clients entered into the settlement agreements and

when they submitted their common benefit application.  Because Appellants

waived their right to appeal to this Court by their participation in the

settlements and in the common benefit fee arbitration process, there is no

basis for this Court to consider Appellants' objections to the fee award. The

appeal should be dismissed.

## STATEMENT OF FACTS

This MDL arises from the opioid epidemic that has devastated

communities across the United States.  In August 2021, the PEC, certain State

attorneys general, and certain defendants reached settlements to potentially

3

resolve all claims brought by governmental entities against those defendants. Governmental subdivisions in the settling states – essentially cities and counties – could opt into the settlement and participate in the receipt of funds to be used to abate the opioid crisis. In connection with that first settlement agreement, the PEC and the settling defendants entered into an "Agreement on Attorneys' Fees, Expenses and Costs" ("Exhibit R"). (A copy of the final version of Exhibit R is Exhibit 1 to the Weinberger Declaration.) Exhibit R set the amount of fees that would be paid by the settling defendants; it also provided a procedure for the allocation of those fees.

In 2022 and 2023, the PEC and various State attorneys general reached settlement agreements with several additional defendants; again, the governmental subdivisions in such states could opt in to the settlements. In each instance, the same Exhibit R was made part of the settlement. *See* Weinberger Dec. ¶ 3.[1] Because – contrary to Appellants' assertions -- none

---

[1] The settlement agreements are public and can be found online. *See* *https://nationalopioidsettlement.com*.

of the actions were settled on a class-action basis, *see* Weinberger Dec. ¶ 3, the fee agreements between the PEC and the various defendants were not subject to court approval.

Appellants – who are not part of the PEC -- represented certain governmental subdivisions that participated in one or more of the settlements. *See* Appellants' Civil Appeal Stmt. of Parties and Issues, Case No. 24-3739, Doc. #5. In so participating, they agreed to be bound by the terms of those agreements, including Exhibit R.

Exhibit R provided for an arbitration process to allocate the attorneys' fees. A three-person arbitration panel, known as the Fee Panel, would be appointed by the district court. Weinberger Dec., Exh. 1 at R-2, R-3. Pursuant to Exhibit R, the attorneys' fees were split between a Contingency Fee Fund and a Common Benefit Fund. Exhibit R provided that the fees in the Contingency Fee Fund would be allocated according to an agreed-upon mathematical model; the Fee Panel would oversee the application of that model. Exhibit R further provided that there would be no appeal at all with respect to the Fee Panel's awards from the Contingency Fee Fund. Weinberger Dec., Exh. 1.

5

With respect to the Common Benefit Fund, Exhibit R provided that the Fee Panel would determine the allocation among attorneys who had "performed work for the common benefit of all subdivisions" pursuant to certain guidelines previously established by the district court and that only limited appeal rights would be available. Weinberger Dec., Exh. 1. In contrast to the Contingency Fee Fund awards, where there was to be no appeal, Exhibit R provided that "*Any* appeal of an award of the Fee Panel from the Common Benefit Fund will be made to the *MDL Court* and be reviewed under an abuse of discretion standard." *Id.* at R-4 (emphasis added).

Exhibit R also provided:

> Attorneys applying to the Attorney Fee Fund knowingly and expressly agree to be bound by the decisions of the Fee Panel, subject to the *limited* appeal rights set forth in this Fee Agreement. . .

*Id.* at R-14 (emphasis added). It further provided:

> The MDL PEC shall be the Authorized Party to enforce this Fee Agreement, as to the payment obligations of the Settling [parties] as set forth in this Fee Agreement, and as to Attorneys making application to the Funds under this Fee Agreement.

*Id.* at R-20.

6

Pursuant to Exhibit R, the PEC moved in the MDL Court, with the consent of the defendants, for the establishment of a Qualified Settlement Fund along with ancillary relief to effectuate the terms of Exhibit R. The motion asked the Court to "appoint, as Fee Panel Arbiters, three experienced jurists/special masters with prior complex and MDL litigation experience, to oversee and allocate the Common Benefit Fund. . . ." MDL Doc.[2] #3823 at 5. The motion repeated the language from Exhibit R that "[a]ny appeal of an award of the Fee Panel from the Common Benefit Fund will be made to the MDL Court" and requested that the Court issue an order establishing a process for applications to the Common Benefit Fund that would, *inter alia,* "provide for the Court to make the final determination of an approved distribution of any common benefit funds." *Id.* at 6-7.

On August 12, 2021, the district court issued the requested order establishing the Qualified Settlement Fund and appointing the "Fee Panel Arbiters." MDL Doc. #3828. In the order, the court included the language

---

[2] Citations in the form of "MDL Doc. #__" are citations to documents on the docket of *In re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio).

7

from Exhibit R that "[a]ny appeal of an award of the Fee Panel from the Common Benefit Fund will be made to this Court . . . ." *Id.* at 6. The order directed the Arbiters:

> to make a preliminary recommendation on the distribution of common benefit fees . . . [and] to address any requests to be heard regarding that preliminary recommendation by attorneys that sought common-benefit fees and make a final recommendation to the Court.

*Id.* It expressly stated that "This Court will make the final determination of an approved distribution of any common benefit funds." *Id.* The August 12, 2021, order directed the Fee Panel to administer the Qualified Settlement Fund in accordance with the terms of the settlement agreements.

On April 1, 2022, the district court issued an "Order Establishing Application Protocols for Reimbursement of Common Benefit Attorneys' Fees" under various of the settlement agreements ("Protocols Order"). Weinberger Dec., Exh. 2. The Protocols Order required all applicants to submit a completed Fee Application. *Id.* at 2. It provided that the Fee Panel would issue preliminary recommendations, after which there would be an opportunity for applicants to object. After hearing and resolving the

objections, the Fee Panel would then issue its final recommendations to the

MDL Court.  *Id.* at 9-10.

The Protocols Order provided for limited review of the Fee Panel's

final recommendations as follows:

### Appeal of Fee Panel Allocation Recommendation

The Court will set forth, at the appropriate time, the process by which Fee Applicants may appeal to the Court the final fee allocation recommendation of the Fee Panel, including the deadline for filing notice with the Court. Any appeal of the Fee Panel's final fee allocation recommendation shall be reviewed by the Court under an abuse of discretion standard.

The Court has plenary authority regarding the awarding of common benefit attorneys' fees and will make the final determination of an approved distribution of fees from the Fee Fund.

### Final Award and Distribution

Upon resolution of all appeals to the Court, or in the event no appeals are filed, the Court will enter *a final non-appealable award* of attorneys' fees from the Fee Fund and shall direct the Fee Panel to allocate those amounts to each Fee Applicant by year, using the criteria set forth in Exhibit R of the Settlement Agreements.

*Id.* at 3 (emphasis added).

The Fee Application required an Attorney Certification. *See*

Weinberger Dec. ¶ 7 & Exh. 3.  The certification was completed electronically

9

and the application could not be submitted without it. *Id.* The certification

included the following:

> I expressly agree to be bound by the decisions of the Fee Panel
> administering the Attorney Fee Fund, subject to the *limited appeal
> rights* set out in Exhibit R to the Settlement Agreements and any
> related procedures adopted by the Fee Panel. . . .

*See* Weinberger Dec. ¶¶ 8-9 & Exh. 4. Appellants submitted a joint

application for common benefit fees to the Fee Panel, *see* Appellants' Civil

Appeals Statement, and, in connection with that application, submitted a

certification with the language quoted above. *See* Weinberger Dec. at ¶¶ 8-

9. At the time Appellants submitted their certification, the district court had

already issued its order clearly stating that the language of Exhibit R meant

that the district court's order would be "non-appealable."

The Fee Panel then engaged in an exhaustive and painstaking fact-

finding process to determine how to allocate the Common Benefit Fund

among the lawyers who had contributed to the common benefit of all the

subdivisions. *See* MDL Doc. #5476-1. This included review and audit of all

common benefit time submitted, a long and iterative interview process in

which the Fee Panel first interviewed attorneys about the common benefit

work of others, then interviewed them about their own common benefit work, and finally interviewed attorneys about the common benefit work of attorneys who listed them as references. It also included extensive analysis of the time and billing rates of the various applicants and the specific factors that the parties had agreed would govern the allocation of common benefit fees.   As the Fee Panel later explained, it "examined vast amounts of qualitative and quantitative information in order to calculate for each individual applicant an approved, normalized lodestar, and then to apply the Exhibit R factors to determine for each applicant an individualized multiplier." *Id.* at 26.

On February 29, 2024, the Fee Panel provided its "Preliminary Recommended Common Benefit Fee Awards" ("Preliminary Recommendations") to the Common Benefit Fee applicants.   MDL Doc. #5476-1.  (The Preliminary Recommendations were not docketed and were confidential, but the document was made publicly available when it was attached as an exhibit to the Panel's June 7, 2024, final recommendations and was docketed at that time.)   The Fee Panel's preliminary recommendation was that Appellants receive no common benefit award.  *Id.* at 32.  The

11

Preliminary Recommendations reiterated what was by now well-known to all parties: "[I]f an applicant disagrees with its Award, the applicant may file an objection with the Panel; and if the applicant disagrees with the Panel's ruling on its objection, the applicant may appeal its Award to the MDL Court." *Id.* at 4-5.

The Preliminary Recommendations set deadlines and procedures for the objection process described in the Protocols Order. It appears that Appellants used the objection process to register their objection to their award. *See* MDL Doc. #5492; MDL Doc. #5520 at n1. Pursuant to the procedures established by the Fee Panel, each objector was permitted to submit written objections and also to present oral argument to the Fee Panel in support of its objection. *See* MDL Doc. ##5476-1; 5476.

On June 7, 2024, the Fee Panel issued Fee Panel Order No. 32-A, its "Final Recommended Allocation of Common Benefit Fee Awards." MDL Doc. #5476. The Fee Panel's final recommendation was that Appellants receive no common benefit award.

Thereafter, the district court issued its "Order Regarding Appeals of Fee Panel Order No. 32-A," setting forth the procedures for appeals from the

Fee Panel to the district court. MDL Doc. #5479. The order provided for the submission of written appeals to the district court from the final recommendations of the Fee Panel. On June 18, 2024, Appellants filed a Notice of Appeal from the Fee Panel's final recommendation; although the Notice of Appeal was filed on the docket, the actual objection was, as required by the district court's order, submitted *in camera*.

On July 11, 2024, the district court issued its fee allocation order (the "Final Fee Order"). MDL Doc. #5520. In the Final Fee Order, as had been the case under the Fee Panel's Preliminary Recommendations as well as its Final Recommended Allocation, Appellants received no common benefit award.

On August 9, 2024, despite their express agreement that the only appeal of the fee allocation would be to the district court and despite their knowledge that this specifically meant that the district court's fee order was non-appealable, Appellants filed a notice of appeal to this Court. MDL Doc. #5584. The PEC, which was designated as the "Authorized Party" to enforce the Fee Agreement, now seeks dismissal of the appeal.

13

## ARGUMENT

## THIS APPEAL SHOULD BE DISMISSED BECAUSE APPELLANTS WAIVED THE RIGHT TO APPEAL TO THIS COURT WHEN THEY AND THEIR CLIENTS OPTED IN TO THE SETTLEMENT AGREEMENTS AND WHEN THEY SUBMITTED THEIR COMMON BENEFIT APPLICATION

"A waiver occurs when a party intentionally abandons a known right." *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022). A party to a settlement may waive its right to appeal an arbitrator's or a district court's determination, so long as it does so expressly. *Dixon v. Travelers Indem. Co.*, 630 F. App'x 518, 520 (6th Cir. 2015); *see also Hill v. Schilling*, 495 F. App'x 480, 487 (5th Cir. 2012) ("A [party] may waive his [or her] statutory right to appeal provided (1) his or her waiver is knowing and voluntary, and (2) the waiver applies to the circumstances at hand, based on the plain language of the agreement."). Where an appellate waiver is express, dismissal of the appeal is required. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 794 F. App'x 387, 388-89 (5th Cir. 2019) (dismissing appeal where settlement agreement expressly waived right to appeal from district court's resolution of claims); *Hill,* 495 F. App'x at 487-88 (dismissing appeal of attorney fee award where parties expressly agreed to waive the

14

right); Charles Alan Wright et al., Fed. Prac. & Proc. § 3901 (2012) ("Appeals attempted in violation of such [waiver] agreements are dismissed.").  The waiver here is not novel -- indeed, [t]he most likely occasion for waiver arises from a settlement agreement that calls for resolution of some disputed matter by the district court, coupled with an explicit agreement that the district court decision shall be final and that all rights of appeal are waived. Charles Alan Wright *et al.*, Fed. Prac. & Proc. § 3901 (2012) (footnotes omitted).

Here, Appellants twice expressly waived their right to appeal to this Court, first when their clients entered into the settlement agreements and second when Appellants submitted their Common Benefit Application. When Appellants and their clients entered into the various settlement agreements in which their clients participated, they were bound by the provisions of Exhibit R and the arbitration process established in that agreement for the allocation of common benefit fees.  In particular, Appellants were bound by the language of Exhibit R which stated that "Attorneys applying to the Attorney Fee Fund knowingly and expressly agree to be bound by the decisions of the Fee Panel, *subject to the limited appeal*

*rights set forth in this Fee Agreement. . . .*"  The "limited appeal rights" set forth in the Fee Agreement were:  (1) for the Contingency Fee Fund, there would be *no* appeal from the decisions of the Fee Panel, and (2) for the Common Benefit Fund, "[*a*]*ny* appeal of an award of the Fee Panel from the Common Benefit Fund will be made to the *MDL Court* and be reviewed under an abuse of discretion standard."  Weinberger Dec., Exh. 1 at R-4 (emphasis added).

The combination of the phrase "limited appeal rights" with the statement that *any* appeal that could be taken (not merely "an" appeal) would be to the district court expressly precludes further appeals beyond the district court.  To begin with, the language specified that "any appeal" that was taken had to meet the description provided – that the appeal be to the district court.  An appeal to any other court would fall afoul of this requirement, because it would be encompassed within the phrase "any appeal," but would not meet the specified condition.[3]

---

[3] Exhibit R also contained the requirement that attorneys seeking common benefit fees agreed to waive "the ability to assert the lack of enforceability of the allocation reached through the arbitration procedures outlined herein." This statement further confirmed that no appeals could be made beyond the specified arbitration procedures set forth in Exhibit R, which specified only

Moreover, applicants expressly agreed that their appeal rights were limited by the language in Exhibit R.  The only limits on appeal rights in that document were the parallel provisions that there would be no appeal with respect to the Contingency Fee Fund and that "any" appeal from the Common Benefit Fund would be to the district court.  If applicants could appeal to this Court as well as to the district court, the appeal would not be limited by the language of Exhibit R.

Appellants further waived their rights when they thereafter submitted their common benefit application.  In order to submit that application, Appellants certified that they "expressly agree to be bound by the decisions of the Fee Panel administering the Attorney Fee Fund, subject to the *limited appeal rights* set out in Exhibit R to the Settlement Agreements." (Emphasis added.)  Appellants thus agreed that they did not have *full* appeal rights

---

an appeal to the district court.  Any appeal beyond that would, of necessity, seek to challenge the enforceability of the allocation reached through the specified arbitration procedures (including appeal to the district court), precisely what all of the common benefit applicants, including Appellants, expressly waived the right to do.

3090995.4

from the decisions of the Fee Panel, but only the *limited appeal rights* set forth in Exhibit R.

Appellants thus twice agreed that "any appeal" would be to the district court and that their appeal rights were limited by that language. The plain language of Exhibit R and the Attorney Certification constitute an enforceable waiver that is clear from the face of the documents. *See Dixon*, 630 F. App'x at 520; *Hill,* 495 F. App'x at 487. This waiver precludes Appellants' appeal.

Even if the waiver language itself were in any way ambiguous (and the PEC submits it is not), the circumstances surrounding the use of this language show that the language of Exhibit R and the Attorney Certification meant that applicants to the Common Benefit Fund were agreeing that the district court's decision could not be appealed to this Court.

The district court certainly understood the language of the waiver that way and stated that understanding first in the order approving the Qualified Settlement Fund in August 2021 and then again (and more explicitly) in the Protocols Order in April 2022, years before the Appellants submitted their fee application. In the Qualified Settlement Fund order, the district court

stated that it would "make the final determination of an approved distribution of any common benefit funds."   MDL Doc. #3828 at 6.   It repeated the "final determination" language in the Protocols Order. Weinberger Dec., Exh. 2 at 11.  A "final determination" is not merely a "final judgment," which is a technical term that includes the right of appeal; a "final determination" is, in plain English, the final say and constitutes an express waiver of the right to appeal the determination.  *L&L Painting Co. v. Odyssey Contr. Corp. (In re Odyssey Contr. Corp.).*, 944 F.3d 483, 486 (3rd Cir. 2019) (stipulation that, after trial court resolved disputed issue, "this proceeding shall be deemed to be finally concluded in all respects" barred a subsequent appeal).

Moreover, and more specifically, the district court stated that, upon its resolution of all appeals from the Fee Panel's final recommended allocation, the district court would enter "a final *non-appealable* award of attorneys' fees."  This language appeared in the very order that set forth the procedures for submitting a common benefit application in April 2022, so Appellants were clearly aware of the district court's construction of Exhibit R long before they submitted their application with the certification waiving the

19

appeal rights to this Court for the second time.  At no time prior to submitting their common benefit application did they (or anyone else, including the PEC, which had negotiated the original settlement where the language limiting appeal rights was first used) suggest that Exhibit R had a meaning different from what the district court had set forth in the Protocols Order – that the district court's resolution of appeals from the Fee Panel would result in a *non-appealable order*.  Thus, even if the meaning of Exhibit R and the Attorney Certification are not deemed clear on their face – and the PEC believes they are – Appellants' conduct, first in failing to take exception or make objection to the district court's statements about the meaning of the language in Exhibit R, and then in submitting their Common Benefit Application and their Attorney Certification with knowledge of the court's construction confirms that Appellants knowingly and voluntarily agreed that the district court's order would be "non-appealable" and thus waived their right to appeal to this Court.

Moreover, Appellants' waiver of their rights was entirely reasonable so there is no basis for this Court to question that that was in fact what was intended.  The procedures established in the Protocols Order and applied by

20

the Fee Panel ensured that Appellants had a full opportunity to state their objections and be heard, even without a right of appeal to this Court. They were given the opportunity to submit detailed factual information to the Fee Panel to support their application.  The Fee Panel was empowered with investigatory powers and able to conduct a robust factual analysis. Appellants were given an opportunity to seek reconsideration of the Fee Panel's preliminary recommendation, through the objection process, which permitted both a written submission and an oral argument/appearance. Finally, they were given the opportunity to appeal the Fee Panel's final recommendation to the district court.  In light of these broad procedural rights, and in light of the extensive opportunities for Appellants to be heard on the issue of the allocation of the Common Benefit Fund, this Court can readily conclude that the waiver language in Exhibit R and in the Attorney Certification that accompanied the Common Benefit Application meant exactly what it appeared to mean – that Appellants were waiving their rights to further appeal in exchange for the opportunity to participate in the common benefit arbitration process.  This Court should enforce that waiver and dismiss the appeal.

21

## Conclusion

For the foregoing reasons, this Court should dismiss this appeal in its

entirety.

September 6, 2024                    Respectfully submitted,

                                     /s/Peter H. Weinberger
                                    Peter H. Weinberger
                                    SPANGENBERG SHIBLEY & LIBER
                                    1001 Lakeside Avenue East, Suite 1700
                                    Cleveland, OH 44114
                                    Telephone:  (216) 696-3232
                                    pweinberger@spanglaw.com
                                    *Counsel for Interested Party-Appellee*
                                    *Plaintiffs' Executive Committee*

*Additional Counsel:*
Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
jrice@motleyrice.com

Jayne Conroy
Andrea Bierstein
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
Telephone: (212) 784-6400
jconroy@simmonsfirm.com
abierstein@simmonsfirm.com

Paul T. Farrell, Jr.
FARRELL & FULLER
270 Munoz Rivera Ave., Suite 201
San Juan, PR 00918
Telephone: (304) 654-8281
paul@farrelfuller.com

Elizabeth J. Cabraser
Paulina do Amaral
LIEFF CABRASER HEIMANN & BERNSTEIN
250 Hudson St., 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
ecabraser@lchb.com
pdoamaral@lchb.com

Anthony J. Majestro
POWELL & MAJESTRO
405 Capitol Street, Suite 807
Charleston, WV  25301
Telephone:  (304) 346-2889
amajestro@powellmajestro.com

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the typeface and type style requirements of F.R.A.P. 27(d)(1)(E), F.R.A.P. 32(a)(5), and F.R.A.P. 32(a)(6), and with the word limits of F.R.A.P. 27(d)(2)(A). This motion contains 4,116 words, as counted by the word-counting feature of Microsoft Word.

/s/Peter H. Weinberger
Peter H. Weinberger

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of September, 2024, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/Peter H. Weinberger*
Peter H. Weinberger

24